IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC.,<br><br>Defendant. | Civil Action No. 15-228-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Civil Action No. 15-282-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC., and 2K SPORTS, INC.,<br><br>Defendants. | Civil Action No. 15-311-RGA |

**MEMORANDUM**

Presently before the Court is Defendants' motion to dismiss for lack of standing. (D.I. 100).[1] The issues have been fully briefed. (D.I. 101, 109, 119). The Court heard oral argument on May 2, 2016. (D.I. 133). For the reasons set forth herein, unless Boeing joins this action within 14 days, Defendants' motion to dismiss will be **GRANTED**.

---

[1] All citations are to Civil Action No. 15-228, unless otherwise indicated.

1

Acceleration Bay LLC ("AB") filed three separate patent infringement lawsuits against Defendants. (D.I. 1). AB alleges that Defendants infringe U.S. Patent Nos. 6,701,344; 6,714,966; 6,732,147; 6,829,634; 6,910,069; and 6,920,497 (collectively "the patents-in-suit"). (D.I. 7). AB claims to own these patents by way of a purchase agreement with the Boeing Intellectual Property Licensing Company. (D.I. 109 at 7). During discovery, Defendants acquired this agreement from Boeing. (D.I. 133 at 67). Shortly thereafter, on March 1, 2016, Defendants filed this motion. (*Id.* at 67, 69-70; D.I. 100).

Standing to sue is a threshold requirement in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is "comprised of both constitutional and prudential components." *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.*, 271 F.3d 140, 145 (3d Cir. 2001). Whether a plaintiff has standing to sue is a matter of law to be determined by the court. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). "Standing must be present at the time the suit is brought." *Id.* at 975-76.

Generally, to satisfy prudential standing, a patent infringement plaintiff "must have held legal title to the patent at the time of the infringement." *Rite-Hite*, 56 F.3d at 1551; *see also* 35 U.S.C. §§ 100(d), 281. "A conveyance of legal title by the patentee can be made only of the entire patent, an undivided part or share of the entire patent, or all rights under the patent in a specified geographical region of the United States." *Id.* (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)). "A transfer of less than one of these three interests is a license, not an assignment of legal title." *Id.* at 1551-52. In circumstances where a patent owner transfers "all substantial rights" to the patents-in-suit, however, "the transfer is tantamount to an assignment of

2

those patents to the exclusive licensee, conferring standing to sue solely on the licensee." *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1358-59 (Fed. Cir. 2010). Thus, to sue for infringement in its own name, a plaintiff must either hold (1) "all patent rights— the entire bundle of sticks," or (2) "all substantial rights." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007).

"[U]nlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights (that is not subject to an exception) that seeks to enforce its rights in a patent generally must sue jointly with the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006) (Just as "a patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee." (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 466 (1926))). In other words, "[w]hen there is an exclusive license agreement, . . . but the exclusive license does not transfer enough rights to make the licensee the patent owner, either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation." *Alfred E. Mann*, 604 F.3d at 1360.

"[W]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991). To determine "whether a provision in an agreement constitutes an assignment or a license, one must ascertain the intention of the parties and examine the substance of what was granted." *Id.* at 874. Here, the license agreement is to be interpreted under Washington

law,[2] which provides that the interpretation of a contract presents a question of law, so long as "the interpretation does not depend on the use of extrinsic evidence, or . . . only one reasonable inference can be drawn from the extrinsic evidence." *Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996). Under Washington law, "the touchstone of the interpretation of contracts is the intent of the parties." *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 844 P.2d 428, 432 (Wash. 1993).

In "ascertain[ing] the intention of the parties and examin[ing] the substance of what was granted . . ., it is helpful to look at wh[ich] rights were retained by the grantor." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000). Here, Boeing nominally assigned "all right, title and interest in and to the [patents-in-suit]" to AB, but that transfer was made "subject to" certain pre-existing licenses, "and the license set forth in paragraph 4.3." (D.I. 102, Ex. A ¶ 4.1). The license in ¶ 4.3 has two components: (1) a non-exclusive, non-transferable right to practice the patents in any field of use; and (2) the exclusive, transferable right to practice the patents in the "Boeing Field of Use,"[3] including the sole right to sublicense and enforce the patents in the Boeing Field of Use. (D.I. 102, Ex. A ¶ 4.3). While Boeing intended to assign all "right, title and interest" in the patents, it clearly intended to "condition[] [that assignment] on the terms of the license [Boeing] retained." *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421,

---

[2] State contract law determines "the proper construction of [patent] assignment agreements." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).

[3] The Boeing Field of Use "includes [the] use of a product, process or service for or in conjunction with" any of the following, or a "simulation" thereof: "aircraft, airplane, missiles, spacecraft, satellite, space station, vehicle, platform or any combination or sub-combination thereof intended for use in the atmosphere . . . or in space, alone or in combination with assets or services located on, above or under the earth's surface." (D.I. 102, Ex. A ¶ 2.5). The Boeing Field of Use also includes: military or national security uses (or a simulation under the auspices of a government); "marine, rail, and multi-modal transportation;" "solar energy technology;" and "information surveillance and reconnaissance." (*Id.*).

4

434 (D. Del. 2014). Since Boeing retained these rights, it did not convey "entire patent[s], an undivided part or share of [any] patent, or all rights under the patent[s] in a specified geographical region of the United States." *Rite-Hite*, 56 F.3d at 1551. AB is therefore an exclusive licensee. *Id.* at 1551-52.

At oral argument, AB argued that it had "been granted all rights," and then "granted a very small package of rights back to Boeing." (D.I. 133 at 39). The agreement provides that the license in ¶ 4.3—which the assignment in ¶ 4.1 was made "subject to"—was a "[l]icense [b]ack to [Boeing]." (D.I. 102, Ex. A ¶¶ 4.1, 4.3). Specifically, the agreement states that "[u]pon the Closing, [AB] hereby grants [the license] to [Boeing] and any Affiliate." (*Id.* ¶ 4.3). In examining a contract with similar language, a district court reached the conclusion advocated by AB. *See Princeton Dig. Image Corp. v. Hewlett-Packard*, 2013 WL 1454945, at *4 (S.D.N.Y. Mar. 21, 2013). In this context, I do not think there is a material distinction between a right retained and a right granted back.[4] Courts "determine the parties' intent by focusing on the objective manifestations of the agreement." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Here, the agreement evinces the parties' intent to effectuate a particular allocation of rights. Boeing's grant was explicitly limited by the agreement's "subject to" language, which reserved for Boeing certain rights. The labels ascribed to those retained rights have no bearing on the "analy[sis] [of] the respective rights allocated to each party under [an] agreement." *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *see also Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 2016 WL 2865704, at *2 (Fed. Cir. May 17, 2016) ("We have not allowed labels to control by treating bare formalities of 'title'

---

[4] Generally, "[a] grant-back clause in a patent license requires the licensee to grant back to the licensor patent rights which the licensee may develop or acquire," rather than rights that already exist. 6A Donald S. Chisum, *Chisum on Patents* § 19.04[3][j] (2016).

5

transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred."); *Intellectual Prop. Dev.*, 248 F.3d at 1344 ("actual consideration of the rights transferred is the linchpin of . . . a[n] [assignment] determination"). Put another way, because Boeing retained certain rights, AB never held "all patent rights." *Morrow*, 499 F.3d at 1339.

"Even if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee." *Propat*, 473 F.3d at 1189. While the Federal Circuit has not "establish[ed] a complete list of the rights" to be examined, it has "listed at least some." *Alfred E. Mann*, 604 F.3d at 1360.[5] "[T]he nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent." *Id.* at 1361; *see also Prima Tek*, 222 F.3d at 1379 ("we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention" (emphasis in original)). "Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Alfred E. Mann*, 604 F.3d at 1361.

Here, Boeing retained the right to sue within its field of use. (D.I. 102, Ex. A ¶ 4.3). This right is not limited or conditioned in any way. The Federal Circuit has concluded that an exclusive field of use licensee does "not hold all substantial rights in the full scope of the . . . patent," and therefore lacks standing. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d

---

[5] Those rights include: (1) the "transfer of the exclusive right to make, use, and sell products or services under the patent;" (2) "the scope of the licensee's right to sublicense;" (3) "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement;" (4) "the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee;" (5) "the duration of the license rights granted to the licensee;" (6) "the ability of the licensor to supervise and control the licensee's activities;" (7) "the obligation of the licensor to continue paying patent maintenance fees;" and (8) "the nature of any limits on the licensee's right to assign its interests in the patent." *Id.* at 1360-61.

6

1273, 1280 (Fed. Cir. 2007). While Boeing conferred upon AB a right to sue within a large field of use—to wit, everything outside the Boeing Field of Use—this conveyance still poses the same "threat of multiple suits based on the same allegations of infringement" that arises whenever a "license . . . split[s] the patented subject matter amongst various parties." *Id.* at 1279-80; *see also Alfred E. Mann*, 604 F.3d at 1360 ("When . . . an exclusive license agreement . . . does not transfer enough rights to make the licensee the patent owner, either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation."). Additionally, Boeing retained the right to assert the patents-in-suit as a counterclaim in any action in which Boeing has been accused of patent infringement. (D.I. 102, Ex. A ¶ 4.4).[6] This limits AB's right to indulge infringements, as Boeing could effectively direct AB to bring suit as a counter-plaintiff. *See Clouding IP*, 61 F. Supp. 3d at 434 ("Symantec can instruct Clouding to sue certain third parties identified by Symantec—namely, third parties that have asserted claims against Symantec. . . . [J]ust as the licensor in *Abbott* could override the licensee's desire to indulge infringement, so, too, can Symantec circumvent Clouding's decision to allow infringement." (citing *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995))). Since Boeing has retained considerable rights to sue, "the most important factor" in this inquiry tips heavily in favor of a finding that Boeing did not transfer to AB all substantial rights. *Alfred E. Mann*, 604 F.3d at 1361.

Boeing also retained the right to "practice the methods described in the [patents-in-suit] and to make, have made, use, sell, offer to sell, import and export any product or service utilizing the [patents-in-suit] for any . . . purpose in any field of use." (D.I. 102, Ex. A ¶ 4.3(a)). Boeing's grant was also made subject to prior licenses. (*Id.* ¶ 4.1, *id.* at 19). Boeing's retention of these

---

[6] The purchase agreement provides that, in these circumstances, AB will "join" Boeing in the action and will bear all legal costs associated with joining. (*Id.*).

7

rights weighs against a finding that Boeing transferred all substantial rights. *Abbott Labs.*, 47 F.3d at 1132-33 (Licensor's retention of a "limited right to make, use, and sell products embodying the patented inventions" was among the rights "that are commonly held sufficient to make a patent owner . . . a necessary party." Additionally, the court considered the fact that "[Licensee's] exclusive license was . . . made subject to prior licenses granted by [Licensor]."); *see also Diamond Coating Techs.*, 2016 WL 2865704, at *3 ("We have held that a 'licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights.'" (quoting *Fieldturf, Inc. v. Sw. Recreational Indus.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004))). Boeing may also require AB "to grant licenses to the [patents-in-suit] . . . as is necessary to comply with [a certain] European Community Commission Decision," and "to comply with the provisions" in an earlier Airbus agreement. (D.I. 102, Ex. A ¶ 4.3). This too suggests that Boeing did not transfer all substantial rights. *See, e.g., Prima Tek*, 222 F.3d at 1380 ("Unlike the agreement in *Vaupel*, [this] agreement . . . goes far beyond a mere 'sub-licensing veto,' . . . . [and] *requires* that Prima Tek I execute a sub-license to Prima Tek II and to no one else."); *see also Alfred E. Mann*, 604 F.3d at 1360 (listing "the scope of the licensee's right to sublicense" as a right to be examined). The agreement also provides that "[i]f [AB] has not actively pursued monetization of the [patents-in-suit] . . . within six (6) months from the Effective Date of this Agreement, [Boeing] at its option shall have the right to have the [patents-in-suit] re-assigned back to [Boeing]." (D.I. 102, Ex. A ¶ 4.5). This too supports a finding that Boeing did not transfer all substantial rights. *Alfred E. Mann*, 604 F.3d at 1360-61 (listing "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement" as a right to be examined). While some of the "termination provisions" in the agreement, along with the "right to receive infringement damages

8

... [as] compensation," are consistent with an "assignment ... 'by way of mortgage,'" this provision is different. *Vaupel*, 944 F.2d at 875 (quoting *Waterman*, 138 U.S. at 256). It goes beyond payment obligations and subjects AB's licensing efforts to the demands of Boeing. If AB does not comply, Boeing may retake possession of the patents.

AB repeatedly emphasizes its obligation to pay maintenance fees. This is indeed a relevant consideration. *Alfred E. Mann*, 604 F.3d at 1361 (listing "the obligation of the licensor to continue paying patent maintenance fees" as a right to be examined); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) ("[Licensor] also is obliged to pay the maintenance fees for the patent."). The transfer of a particular substantial right does not, however, preclude a finding that Boeing did not transfer all substantial rights.

Upon consideration of the provisions of the purchase agreement, I conclude that Boeing did not transfer all substantial rights to AB. When a "licensor d[oes] not transfer 'all substantial rights' to the exclusive licensee, ... the licensor remains the owner of the patent and retains the right to sue for infringement." *Alfred E. Mann*, 604 F.3d at 1359. The Federal Circuit "adheres to the principle that a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit brought by an exclusive licensee having fewer than all substantial rights." *Intellectual Prop. Dev.*, 248 F.3d at 1347.

Even if I were to conclude, as AB urges, that Boeing transferred all substantial rights to AB, Boeing—as an exclusive licensee—would still need to be joined in this action. *See Alfred E. Mann*, 604 F.3d at 1360 (citing *Aspex Eyewear*, 434 F.3d at 1344); *Clouding IP*, 61 F. Supp. 3d at 430 n.8 ("[W]here the plaintiff is a patentee who has given away some but not all substantial rights, it must join its exclusive licensee."); *Personalized Media Commc'ns, L.L.C. v. Echostar Corp.*, 2012 WL 8251414, at *3 (E.D. Tex. July 10, 2012) (requiring joinder of field of

9

use licensee). "Because one purpose of the joinder requirement is to protect the alleged infringer from multiple lawsuits, the transfer of the right to sue for infringement is critical." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016). Here, since Boeing maintains a right to sue under any reading of the agreement, there exists "a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Int'l Gamco*, 504 F.3d at 1278.[7] Therefore, since Boeing's absence would place on Defendants a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," it would be a required party to this action. Fed. R. Civ. P. 19(a)(1).[8]

Boeing must be a plaintiff for these lawsuits to continue. It is not. Therefore, AB lacks prudential standing and this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Defendants concede, however, that any prudential standing deficiencies would be cured by Boeing's joinder. (D.I. 133 at 5). AB represented at oral argument that Boeing would likely not join in these lawsuits. (Id. at 34). AB's briefing makes no suggestion to the contrary. Nonetheless, AB states in its letter to the Court that it "may cure any defect in prudential standing." (D.I. 132 at p. 1). Accordingly, I am inclined to afford AB an opportunity to correct this deficiency.

---

[7] AB insists that since AB "'will be a party to any suit that [Boeing] initiates, it will be collaterally estopped from re-litigating an issue that received a final judgment on the merits,' removing any risk of inconsistent litigation." (D.I 133 at 3 (alteration in original) (citing *Bluestone Innovations LLC v. Nichia Corp.*, 2013 WL 1729814, at *5 (N.D. Cal. Apr. 22, 2013))). The joinder of AB in any action initiated by Boeing does not remove the risk of duplicative litigation. For instance, if Boeing is not joined in this action, neither res judicata nor collateral estoppel would bar future claims asserted by Boeing (or a transferee) that could not have been raised by AB in this case—i.e., claims within the Boeing Field of Use. *Gamco* describes this very concern. *Int'l Gamco*, 504 F.3d at 1279 ("the single infringing act of offering NYSL games might subject the infringer to suit by Gamco for the lottery games, and separately by IGT or some other game-specific licensee for the other games").

[8] I recognize that this conclusion may conflict with that reached in *Bluestone Innovations*, 2013 WL 1729814, at *5. Rule 19 is not subject to *per se* rules, however. *See Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften e.V.*, 734 F.3d 1315, 1326 (Fed. Cir. 2013). While the court in *Bluestone* concluded, based on the facts of that case, that an exclusive licensee was not a necessary party, I conclude differently with respect to Boeing.

10

If Boeing fails to join this action within 14 days, Defendants' motion will be **GRANTED**. I need not reach the other arguments raised by Defendants unless Boeing joins this action. A separate order will be entered.

June 3, 2016

/s/ Richard G. Andrews
United States District Judge