IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-228 (RGA) |
| | ) | |
| ACTIVISION BLIZZARD, INC. | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-282 (RGA) |
| | ) | |
| ELECTRONIC ARTS INC., | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-311 (RGA) |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | REDACTED - PUBLIC VERSION |
| INC., ROCKSTAR GAMES, INC. and | ) | |
| 2K SPORTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR AN AWARD OF ATTORNEYS' FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071
(213) 615-1700

David P. Enzminger
WINSTON & STRAWN LLP
275 Middlefield Road
Suite 205
Menlo Park, CA 94025
(650) 858-6500

Daniel K. Webb
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

Originally Filed;  July 11, 2016
Redacted Version Filed:  July 18, 2016

# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     SUMMARY OF ARGUMENT. ...............................................................................1

III.    STATEMENT OF FACTS ...................................................................................3

IV.     LEGAL STANDARDS ........................................................................................8

        A.    Standing Is A Controlling Threshold Issue ..........................................................8
        B.    The Exceptional Case Standard, Post-*Octane Fitness* ...........................................9

V.      DEFENDANTS ARE THE "PREVAILING PARTIES" UNDER 35 U.S.C. § 285..........9

VI.     DEFENDANTS SHOULD BE AWARDED FEES UNDER 35 U.S.C. § 285
        BECAUSE ACCELERATION BAY'S FACTUAL AND LEGAL POSITIONS
        WERE EXCEPTIONALLY WEAK....................................................................11

VII.    DEFENDANTS SHOULD BE AWARDED THEIR FEES UNDER 35 U.S.C. § 285
        BECAUSE ACCELERATION BAY LITIGATED THIS CASE IN A VEXATIOUS
        MANNER .................................................................................................16

VIII.   ALTERNATIVELY, THE COURT SHOULD AWARD DEFENDANTS
        THEIR FEES AND COSTS UNDER ITS INHERENT POWER ...................................18

IX.     CONCLUSION ...........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Abbot Labs. v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995)...................................................................................13

*Advanced Video Techs. LLC v. HTC Corp.*,
   Case No. 1:11-CIV-06604, 2015 WL 7621483 (S.D.N.Y. Aug. 28, 2015) ................ 9, 11, 17

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010)..........................................................................*passim*

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006)........................................................................ 2, 8, 15

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ...............................................................................................20

*Clouding IP, LLC v. Google, Inc.*,
   61 F. Supp. 3d 421 (D. Del. 2014) ................................................................. 8, 15, 17

*Clouding IP, LLC v. EMC Corp.*,
   C.A. No. 13-1455, 2015 WL 5766872 (D. Del. Sept. 30, 2015) ...........................17

*CRST Van Expedited, Inc. v. E.E.O.C.*,
   136 S. Ct. 1642 (2016) ..........................................................................................11

*Independent Wireless Tel. Co. v. Radio Corp.*,
   269 U.S. 459 (1926) ...........................................................................................2, 8

*Homeland Housewares, LLC v. Sorensen Research*,
   581 F. App'x 877 (Fed. Cir. 2014)........................................................................19

*Inland Steel Co. v. LTV Steel Co.*,
   364 F.3d 1318 (Fed. Cir. 2004).........................................................................10, 11

*Ins. Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) .............................................................................................10

*Int'l Gamco Inc. v. Multimedia Games*,
   504 F.3d 1273 (Fed. Cir. 2007)......................................................................2, 15, 16

*Lakim Indus., Inc. v. Linzer Products Corp.*,
   No. 2:12-cv-04976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013) ......................18

*Luminara Worldwide v. Liown Elecs.*,
   814 F.3d 1343 (Fed. Cir. 2016)..............................................................................16

*Macauto U.S.A. v. BOS GMBH & KG*,
   Case IPR2012-00004 (PTAB Jan. 24, 2013) ........................................................ 11

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ............................................................................... 18

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) ............................................................................... 19

*Microsoft Corp. v. Parallel Networks Licensing, LLC*,
   Case IPR2015-00483 (PTAB July 15, 2015) ......................................................... 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ..................................................................................... 9, 10

*Parallel Iron LLC v. NetApp Inc.*,
   70 F.Supp.3d 585 (D. Del. 2014) ...................................................................... 19, 20

*Prima Tek II, L.L.C. v. A-Roa Co.*,
   222 F.3d 1372 (Fed. Cir. 2000) ........................................................................ 8, 13

*Propat Int'l. Corp. v. Rpost*,
   473 F.3d 1187 (Fed. Cir. 2007) ............................................................................. 16

*Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.)*,
   132 F.3d 152 (3d Cir. 1997) .................................................................................. 20

*Reger v. Nemours Found., Inc.*,
   599 F.3d 285 (3d Cir. 2010) .................................................................................. 12

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538  (Fed. Cir. 1995) ............................................................................... 12

*Summit Data Sys., LLC v. EMC Corp*,
   C.A. No. 10-749, 2014 WL 4955689 (D. Del. Sept. 25, 2014) .............................. 19

*Vehicle Operation Techs. LLC v. Ford Motor Co.*,
   C.A. No. 13-539-RGA, 2015 WL 4036171 (D. Del. July 1, 2015) ........................ 10

*Waterman v. Mackenzie*,
   138 U.S. 252 (1891) ....................................................................................... 12, 15

*Walker Digital, LLC v. Expedia, Inc.*,
   950 F. Supp. 2d 729 (D. Del. 2013) ....................................................................... 17

**Statutes**

35 U.S.C. § 285 .................................................................................................... *passim*

35 U.S.C. § 286 .................................................................................................................11

35 U.S.C. § 315(b) ...........................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 54(d)(2)(B)(iii), .......................................................................................21

D. Del. LR 54.1(a)(1) .......................................................................................................12

D. Del. LR 54.1(c) ............................................................................................................12

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On June 20, 2016, the Court dismissed these actions for lack of standing.  D.I. 148.[1]
Defendants Activision | Blizzard, Inc., Electronic Arts Inc., Take-Two Interactive Software, Inc.,
2K Sports, Inc., and Rockstar Games, Inc. ("Defendants") now move for an award of attorneys'
fees, costs, and other expenses, against Plaintiff Acceleration Bay, LLC ("Acceleration Bay")
pursuant to 35 U.S.C. § 285 ("Section 285") and the Court's inherent power.

## II.    SUMMARY OF ARGUMENT

These cases are exceptional and Defendants should be awarded their fees. Each case
"stands out from others" both for the weakness of Acceleration Bay's litigation positions and the
unreasonable manner in which it litigated each case.  First, Acceleration Bay's substantive
position on standing was objectively unreasonable, given the clear Federal Circuit law and the
substantial rights retained by Boeing in the asserted patents.  Second, Acceleration Bay withheld
from production the relevant purchase agreement, which was only produced by Boeing in
response to a subpoena.  Third, Acceleration Bay continued to prosecute its lawsuits aggressively
even after Defendants raised Acceleration Bay's standing problems, filing multiple motions to
compel and insisting on an aggressive deposition schedule.

Acceleration Bay is a patent assertion entity ("PAE") whose primary if not sole purpose
was to acquire and assert the Boeing Patents[2] against these specific Defendants.  Acceleration
Bay asserted the Boeing Patents against Defendants when it knew (or willfully ignored) that it
could not assert the patents without Boeing, because Acceleration Bay lacked sufficient rights to
have standing to prosecute these actions by itself.  Even a cursory review of the "Patent Purchase
Agreement" between Acceleration Bay Inc. and The Boeing Company ("Boeing") (the "Boeing

---

[1]     Unless stated otherwise, all docket references are to *Acceleration Bay LLC v. Activision Blizzard Inc.*, C.A. No. 15-228-RGA.

[2]     The Boeing Patents include U.S. Patent Nos. 6,732,147, 6,910,069, 6,920,497, 6,701,344, 6,714,966 and 6,829,634

Agreement") and the overwhelming Federal Circuit law confirms that Acceleration Bay failed to obtain sufficient rights to bring these lawsuits as a sole plaintiff.

In a case later incorporated into Rule 19, the Supreme Court held that the presence of both the patent owner and any exclusive licensee "is indispensable . . . to enable the alleged infringer to respond in one action to all claims of infringement for his act." *Independent Wireless Tel. Co. v. Radio Corp.*, 269 U.S. 459, 466 & 468 (1926) ("[B]oth the owner and the exclusive licensee are generally necessary parties in the action in equity.") (citation omitted). The Federal Circuit has repeatedly followed this precedent and held that a patent owner must join its exclusive licensee, and vice versa. *Int'l Gamco Inc. v. Multimedia Games*, 504 F.3d 1273, 1278 (Fed. Cir. 2007); *Aspex Eyewear, Inc. v. Miracle Optics, Inc*., 434 F.3d 1336, 1344 (Fed. Cir. 2006)); *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). Under any reasonable interpretation of the Boeing Agreement, Boeing's absence precluded Acceleration Bay from asserting the Boeing Patents.[3]

Beyond the fact that a patent plaintiff should know the black letter law on standing to bring a patent suit, Acceleration Bay's exacerbated matters through its litigation conduct. Instead of acknowledging and producing the Boeing Agreement, Acceleration Bay's actions effectively concealed both its existence and significance. Acceleration Bay filed complaints that repeatedly—but incorrectly—alleged that it owned "*[a]ll rights, title, and interest"* in the Boeing Patents. It prepared, recorded and relied on a misleading "Assignment of Patent Rights" (the "Recorded Assignment") that does not mention the substantial rights reserved by Boeing to the Boeing Patents. Instead, the Recorded Assignment incorrectly states that Acceleration Bay had been assigned the patents *in their entirety*, along with *all claims* for infringement and *all rights*

---

[3]     Indeed, the defects in standing were so apparent from the Boeing Agreement, Defendants notified Acceleration Bay and this Court of Defendants' intention to bring a motion to dismiss for lack of standing less than a month after receiving the Agreement.

*to damages*—to the same extent that Boeing had previously enjoyed them. These statements were unsupported. The Boeing Agreement—the document governing the transaction—states that Boeing retained sole right to practice the patents and to sue and pursue infringers in a specific field of use, as well as many other substantial rights. And because the Recorded Assignment has no independent legal significance, it may be inferred that it was created to conceal the facts that so clearly demonstrate Acceleration Bay's lack of standing.

Acceleration Bay's bad faith may also be inferred from its failure to produce the Boeing Agreement in discovery or identify it in its initial disclosures. Nearly a year after these cases commenced, Defendants finally obtained the Boeing Agreement, not from Acceleration Bay, but from Boeing by subpoena. Defendants might have never learned of the lack of assignment if they had accepted as true the representations in the Recorded Assignment.

Even after Defendants told Acceleration Bay that it lacked standing, it continued to multiply the cost of the proceedings by aggressively pushing forward with all aspects of the litigations instead of first resolving the controlling threshold issue of standing. Its conduct was especially reckless given the weakness of its position. Acceleration Bay's papers consistently ignored the controlling law, incorrectly represented the law it did cite, and contained no Federal Circuit or other controlling case law that supported its position. These cases truly stand out from others. An award of fees is warranted under either Section 285 or this Court's inherent power.

## III.   STATEMENT OF FACTS

Acceleration Bay, Inc. was formed on August 27, 2014 (*see* Certificate of Incorporation (Ex. 1)), presumably for the purpose of acquiring and asserting the Boeing Patents. Hr'g Tr. (5/2/16) (Ex. 14) at 45:19-22. By that time, it was already working with its litigation counsel, Kramer Levin, which is identified as the "Sole Incorporator" in the "Certificate of Incorporation of Acceleration Bay, Inc." *Id.* at 2.

On December 10, 2014, Acceleration Bay, Inc. and Boeing entered into the Boeing Agreement relating to multiple patents assigned to Boeing. D.I. 109 at 5; *see also* Boeing Agreement (Ex. 2). Acceleration Bay made only a ███████████████████████████████ ██████████████████████████████ in the Boeing Patents—an interest that was far from sufficient to allow it to fulfill its raison d'être of asserting the Boeing Patents. Ex. 2 at 003031. That same day, Kramer Levin filed the Recorded Assignment with the U.S. Patent and Trademark Office ("USPTO"). *See* Ex. 3 at 5. Thus, it appears that Acceleration Bay had the ability to rely on advice of litigation counsel to negotiate and draft the Boeing Agreement.[4]

The Recorded Assignment mischaracterized the Boeing Agreement. The Recorded Assignment wrongly states that the Assignment transfers to Acceleration Bay the patents in their entirety such that the Asserted Patents would be "held and enjoyed by [Acceleration Bay] for its own use and enjoyment . . . as fully and entirely as the same would have been held and enjoyed by [Boeing] . . ." Ex. 3 at 7. And it also wrongly states that Acceleration Bay received "***all claims for damages…with the right to sue for and collect the same for its own use and behalf*** . . . ." *Id*. (emphasis added).

Far from granting all rights and claims as Acceleration Bay contended, the Boeing Agreement actually provided for Boeing's retention of substantial rights, including, *inter alia*, *exclusive* rights in Boeing's field of use, such as:

---

[4]    Plaintiff's counsel has made several statements that have implied involvement with the negotiation and drafting of the Boeing Agreement. At the February 12, 2016 hearing, in defense of Plaintiff's paltry production of documents relating to the negotiation and drafting of the Boeing Agreement, Plaintiff's counsel stated "[w]ithout waiver of privilege or any immunity, sometimes people are careful not to create a lot of documents, and we've produced the relevant documents." Hr'g Tr. (2/12/2016) (Ex. 13) at 61:9-14. At the May 2, 2016 hearing, Acceleration Bay's counsel made several representations regarding the intent of the parties that deviated from the contents of the Boeing Agreement. For instance, Acceleration Bay's counsel stated that "Boeing knew who Acceleration Bay was going to sue and try to license these patents, enforce these patents against them." Hr'g Tr. (5/2/2016) (Ex. 14) at 45:19-22.



Indeed, the requirement that Acceleration Bay join if Boeing filed a counterclaim in Acceleration Bay's field of use, demonstrates that Boeing and Acceleration Bay knew the standing requirements for an exclusive licensee. *Id.*

Notably, the Boeing Agreement also acknowledges Sony's rights from an earlier license that Boeing granted to Sony, which license gave Sony extensive rights within the Sony "Field of Use." *See* Sony License (Ex. 4), § 2.1 *with* Ex. 2 at 003045.

Thus, Acceleration Bay knew the Boeing Agreement did not, and could not, grant any exclusive right to Acceleration Bay for products operating on the Sony platform.[6]

In March and April of 2015, Acceleration Bay filed these cases. In each of the Complaints, Acceleration Bay alleged as to each of the six asserted patents: "*[a]ll rights, title,*

---

[5]

[6] Nevertheless, Plaintiff continued to accuse products operating on the Sony platform and continued to pursue discovery on these issues.

*and interest* in the . . . Patent have been assigned to Acceleration Bay, who is the ***sole owner*** of the . . . Patent," even though that was not the case. E.g. D.I. 1 (Activision) at ¶¶ 11, 14, 17, 20, 23, 26 (emphasis added). Acceleration Bay quickly advised that it was seeking a financial windfall, stating that it was seeking "50 to 150 million per defendant" at the parties' first conference with this Court, █████████████████████████████████. Hr'g Tr. (10/13/2016) (Ex. 10) at 40:24-41:2.

Discovery opened on September 29, 2015. On September 30, 2015, Defendants served their first discovery requests. D.I. 25. And on October 9, 2015, Defendants served a subpoena on Boeing. D.I. 29. This discovery included specific requests directed to the Boeing Agreement and related documents. *See* RFP Nos. 87-89 (Ex. 5); Interrogatory No. 8 (Ex. 6); Subpoena and Request Nos. 7, 12, 13, 17, 18 (Ex. 7).

The parties exchanged their Rule 26 initial disclosures on November 2, 2015. D.I. 38. Acceleration Bay did not, however, identify the Boeing Agreement or any Boeing witness. *See* Ex. 8A-C. The parties also exchanged their disclosures under Section 1(c) of the Court's Rule 16 Scheduling Order on November 12, 2015. D.I. 43. Those disclosures also did not mention the Boeing Agreement or any Boeing witness. *See* Ex. 9A-C.

Acceleration Bay made a first production of documents on November 2, 2015. That production included website printouts of the USPTO assignment search showing a recordation of the purported patent assignment, publicly available documents, and the file wrappers for the Boeing Patents. Acceleration Bay never produced the Boeing Agreement, and both Acceleration Bay and Boeing refused to produce any of the communications that led to the agreement. *See* Exs. 11, 12 highlighted.

On January 15, 2016, more than three months after having been subpoenaed, Boeing—which was represented by Acceleration Bay's counsel—produced the Boeing Agreement. Defendants quickly learned that the Boeing Agreement did not transfer ownership to, or confer standing on, Acceleration Bay.  On February 12, 2016, Defendants advised this Court and Acceleration Bay's counsel that Defendants intended to bring a motion to dismiss for lack of standing.  *See* Hr'g Tr. (2/12/2016) (Ex. 13) at 48:17-56:2.

Defendants filed the motion to dismiss on March 1, 2016.  D.I. 100.  Acceleration Bay opposed the motion (D.I. 109), but could not identify a single Federal Circuit case that supported its arguments and significantly misrepresented the cases it did cite.  Of note, Acceleration Bay did not, or could not, explain how the specific provisions of the Boeing Agreement cited by Defendants could be reconciled with Acceleration Bay's indefensible position that it had all substantial rights under the patents.  Notwithstanding this, even after receiving Defendants' motion to dismiss, Acceleration Bay pressed forward on all aspects of discovery.

At the May 2 hearing on the motion, Acceleration Bay repeatedly relied on the Recorded Assignment instead of the actual terms of the Boeing Agreement.  At the conclusion of the hearing, Defendants asked the Court to stay the case pending its decision.  Ex. 14 at 68:8-13. Even though Acceleration Bay had represented to the Court that Boeing was "highly unlikely" to join as a party, Hr'g Tr. (5/2/16) (Ex. 14) at 34:20; *see also id.* at 34:12-18, Acceleration Bay objected to the request for a stay.  *Id.* at 68:8-13.  The Court directed the parties to file letter briefs on Defendants' motion to stay.  Acceleration Bay opposed Defendants' request for a stay on May 5, 2016, calling it an improper effort to evade discovery and claiming that "[b]ecause Acceleration Bay may cure any defect in prudential standing, there is no benefit to staying the

cases while the motion is resolved."  D.I. 132 at 1.  After the hearing, Acceleration Bay pressed

forward with e-discovery, depositions and still more discovery motions.

On May 11, 2016, the Court directed the parties to file supplemental briefing on the

question: "If the Court concludes that Acceleration Bay is the owner of the patents-in-suit, is

Boeing required to be joined as a party under Fed. R. Civ. P. 19?" D.I. 135.  The parties did so.

D.I. 137 and 138.  Acceleration Bay ignored or misrepresented the holdings of key cases that had

been addressed at the hearing, including *Independent Wireless*, *Aspex Wireless* and *Alfred E.

Mann*, and *Clouding IP, LLC v. Google, Inc.*, 61 F. Supp. 3d 421, 430 n.8 (D. Del. 2014), each of

which plainly addressed the question presented by the Court and held that a patent owner must

join its exclusive licensee, and vice versa.  *Compare* D.I. 137 *with* D.I. 138.

On June 3, 2016, consistent with all of the cited authority, the Court issued an Opinion

finding that Acceleration Bay is "an exclusive licensee" that did not hold all substantial rights

and therefore advised that the case must be dismissed.  D.I. 148 ("Order") at 5.  Noting

Acceleration Bay's representation that standing could be cured, the Court gave Acceleration Bay

two weeks to obtain Boeing's participation in the lawsuit.  *See id.* at 9-11.  On June 17,

Acceleration Bay advised the Court that Boeing would not join and on June 20, the Court

dismissed these cases without prejudice.  D.I. 152, 153.

## IV.    LEGAL STANDARDS

### A.    Standing Is A Controlling Threshold Issue

In awarding fees in a similar case, a court observed that obtaining ownership of a patent

is something a potential plaintiff has to accomplish to file an infringement suit.  *See, e.g.*,

*Advanced Video Techs. LLC v. HTC Corp.*, 2015 WL 7621483, at *2 (S.D.N.Y. Aug. 28, 2015).[7]

And standing is the first thing any potential patent plaintiff must evaluate as part of its pre-suit

---

[7]    Currently on appeal as *Advanced Video Techs. LLC v. HTC Corp.*, no. 16-1476.

diligence. *Id*. Indeed, standing is a threshold issue in any case. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376 (Fed. Cir. 2000).

### B. The Exceptional Case Standard, Post-*Octane Fitness*

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court recently overruled the Federal Circuit's "overly rigid" formulation of the "exceptional" case standard in favor of a more flexible approach. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. The Court also clarified that § 285 "imposes no specific evidentiary burden, much less such a high one." *Id*. at 1758. A party need only establish that an award of fees is warranted by a preponderance of the evidence. *See id*.

## V. DEFENDANTS ARE THE "PREVAILING PARTIES" UNDER 35 U.S.C. § 285

Under 35 U.S.C. § 285, Defendants are the prevailing parties. To qualify as the prevailing party, all that is required is "to receive at least some relief" that "alters the legal relationship of the parties." *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (holding that a defendant who won dismissal after the USPTO cancelled the patents was a prevailing party); *see also Vehicle Operation Techs. LLC v. Ford Motor Co.*, 2015 WL 4036171, at *2 (D. Del. July 1, 2015) ("[prevailing] party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment."). Defendants plainly satisfy that standard here, because they obtained dismissal of the Plaintiff's case and a legal judgment (with preclusive effect) that Plaintiff lacked the right to sue alone. D.I. 148 at 5. This dismissal altered the legal relationship of the parties in several material respects.

Most obviously, this dismissal prohibited Plaintiff from suing Defendants until Plaintiff either joined Boeing, the patents' owner, or acquired the remaining rights in the patents. *See, e.g., Ins. Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 702, n.9 (1982) ("principles of res judicata apply to jurisdictional determinations").

Additionally, the dismissal obtained by Defendants forever eliminated from contention more than a year of potential damages.  Patent law bars recovery for "infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286. Under the original complaint in this action, Plaintiff could theoretically recover damages for alleged infringement stretching back to 2009.  Plaintiff can no longer recover damages for that alleged infringement.

The dismissal also eliminated the deadline for seeking *inter partes* reviews of the patents at the USPTO.  Defendants were barred from seeking *inter partes* reviews because more than one year had passed since the complaint had been served. *See* 35 U.S.C. § 315(b). The dismissal, however, voided those deadlines. *See Macauto U.S.A. v. BOS GMBH & KG*, Case IPR2012-00004 (PTAB Jan. 24, 2013) (dismissal without prejudice nullifies the effect of service that would have triggered the §315(b) bar); *Microsoft Corp. v. Parallel Networks Licensing, LLC*, Case IPR2015-00483 (PTAB July 15, 2015) (same).  As a result  of the dismissal, Defendants may now file additional petitions for *inter partes* review.

It does not matter that the dismissal was not based on a finding of non-infringement or invalidity.  Although some cases have suggested that relief must be "on the merits," *e.g., Inland Steel*, 364 F.3d at 1320, the Supreme Court has recently clarified that it is "common sense" that a "defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016).  After all, one of the principal purposes of fee-shifting is "to deter the bringing of lawsuits without

foundation," and "[i]t would make little sense if Congress' policy of sparing defendants from the costs of *frivolous* litigation depended on the distinction between merits-based and non-merits-based frivolity." *Id.* at 1652 (emphasis original, internal quotations and citations omitted).  A defendant has "fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id.* at 1651.  Acceleration Bay's challenge has been rebuffed and Defendants are thus the prevailing party.[8]

## VI.   DEFENDANTS SHOULD BE AWARDED FEES UNDER 35 U.S.C. § 285 BECAUSE ACCELERATION BAY'S FACTUAL AND LEGAL POSITIONS WERE EXCEPTIONALLY WEAK

Defendants should be awarded their fees under 35 U.S.C. § 285 because of the exceptional weakness of Acceleration Bay's factual and legal positions.  Acceleration Bay alleged in each case that it owned "all, right, title and interest" in the asserted patents. *See e.g.* D.I. 1 at ¶¶ 11, 14, 17, 20, 23, 26.  There was no factual basis for this statement.  Nevertheless, Acceleration Bay persisted in advancing this statement in opposition to the motion to dismiss.  Instead of acknowledging and attempting to prove ownership and standing under the framework of *Waterman* and *Rite-Hite* and *Alfred E. Mann*,[9] Acceleration Bay doggedly relied on its own characterizations as substantive proof of this claim.  But no reading of the Boeing Agreement, no matter how strained, can be said to have granted Acceleration Bay "all rights, title, and interest."

Any reasonable analysis of Supreme Court and Federal Circuit law on standing in patent cases would have revealed (and did reveal) that Boeing reserved far too many rights for it to have transferred ownership of the patents, much less sole ownership and interest, to Acceleration Bay.  A basic comparison of the Boeing Agreement against the Federal Circuit's well-articulated legal framework exposes major shortcomings in the transfer of rights between Boeing and

---

[8]   This common sense conclusion is consistent with the local rules of this district regarding the taxation of costs.  D.Del. LR 54.1(c).

[9]   *Waterman v. Mackenzie*, 138 U.S. 252 (1891); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995); *Alfred E. Mann.*, 604 F.3d at 1360-61.

Acceleration Bay.  Indeed, Acceleration Bay failed to acquire the following rights which are traditionally deemed significant to qualify one as a patent owner:

- The exclusive right to sue for infringement. *See* D.I. 148 at 7 ("Since Boeing has retained considerable rights to sue, 'the most important factor' in this inquiry tips heavily in favor of a finding that Boeing did not transfer to Acceleration Bay all substantial rights.") (citing *Alfred E. Mann*, 604 F.3d at 1361);

- The exclusive right to practice the patents. *See* D.I. 148 at 7 ("Boeing's retention of these rights weigh against a finding that Boeing transferred all substantial rights.") (citing *Abbot Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995));

- The exclusive right to indulge in infringement. *See* D.I. 148 at 7 ("This limits Acceleration Bay's right to indulge infringements, as Boeing could effectively direct Acceleration Bay to bring suit as a counter-plaintiff.");

- The exclusive right to license or sub-license. *See* D.I. 148 at 8 ("This too suggests that Boeing did not transfer all substantial rights.") (citing *Prima Tek II*, 222 F.3d at 1380); and

- The right to license without being subject "to the demands of Boeing." D.I. 148 at 9 ("It goes beyond payment obligations . . . If Acceleration Bay does not comply, Boeing may retake possession of the patents.").

All relevant Federal Circuit cases hold that these major omissions established that Acceleration Bay neither owned the patent nor had standing to sue as a licensee. *See, e.g., Alfred E. Mann*, 604 F.3d at 1360 ("[T]ransfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment."); *Abbott Labs.*, 47 F.3d at 1132 ("[T]he right to indulge infringements . . . normally accompanies a complete conveyance of the right to sue."); *PrimaTek*, 222 F.3d at 1380 ("A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights.").

Acceleration Bay's positions contradicted any reasonable application of controlling law for determining ownership.  There is perhaps no better evidence of the objectively unreasonable nature of Acceleration Bay's claim to standing than the superficial quality of its arguments in opposition to Defendants' motions to dismiss.  Although Defendants pointed to specific

provisions of the Boeing Agreement to show that Boeing had reserved for itself substantial rights in the patents, Acceleration Bay's counsel continued to justify this litigation by arguing that the rights reserved to Boeing were irrelevant because it was the "intent" of Acceleration Bay and Boeing to transfer ownership. *See, e.g.*, D.I. 109 at 3, 5 *and* Hr'g Tr. (5/2/16) (Ex. 14) at 29:9-10 ("You should look at the intent of the parties and that is what governs."). The weakness of Acceleration Bay's arguments is further confirmed by its repeated reliance on the misleading Recorded Assignment even though it had no legal impact on the actual rights transferred by the Boeing Agreement.  Acceleration Bay's counsel argued:

- "I think the most telling document in the Patent Purchase Agreement is an exhibit. It was an exhibit on the Assignment Agreement. I can hand it up . . . This was intended to be filed with the Patent Offices in the United States and Europe.  So this is what Boeing and Acceleration Bay were telling the public what the rights were." Ex. 14 at 29:19 – 30:5.

- "We have an agency of the United States Government that has recognized Acceleration Bay as the patent owner.  This is kind of like a Miracle on 34th Street moment. The government agency has recognized it as the patent owner. That is very telling." Ex. 14 at 35:10-14.

- "THE COURT: I'm sure what you're telling me is, the PTO has no reason to say anything different, because they said you're the patent owner and you said you're the patent owner.

  MR. ANDRE: Well, in fact, we have the Assignment Agreement which we showed you, says we're the patent owners." Ex. 14 at 35:21-25.

But Acceleration Bay's reliance on the irrelevant Recorded Assignment and boilerplate recitals in the Boeing Agreement was untenable.  In a long line of patent cases, both the Supreme Court and the Federal Circuit have repeatedly held that standing must be determined on the basis of substantive rights, rather than labels.  *See, e.g., Waterman*, 138 U.S. at 256 ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.").  No case stands for the contrary position.  Surely, Acceleration Bay must have been aware of the

legal authorities and the proper analytical framework governing its core business before it filed these complaints. Nevertheless, it brought and maintained these suits based solely on the argument that standing could be resolved by reference to labels and boilerplate recitals alone.

Acceleration Bay embarked on a high-stakes gamble and incredibly expensive litigation campaign that consumed over a year without any objectively reasonable basis to claim that it had standing. Acceleration Bay failed its diligence at step one—obtaining ownership of a patent—a step it absolutely had to accomplish in order to file these lawsuits. Even accepting Acceleration Bay's ownership arguments, specious as they were, Acceleration Bay ignored controlling authority that Boeing must be joined as an exclusive field of use licensee.

It is well-settled, black letter law that a field-of-use provision requires all owners of exclusive rights to be joined in the lawsuit. *Int'l Gamco*, 504 F.3d at 1278. The field-of-use provision alone was sufficient to deny Acceleration Bay's standing to sue without Boeing. *See Alfred E. Mann*, 604 F.3d at 1360 (*citing Aspex Eyewear*, 434 F.3d at 1344); *see also Clouding*, 61 F. Supp. 3d at 430 n.8 ("[W]here the plaintiff is a patentee who has given away some but not all substantial rights, it must join its exclusive licensee."). That Boeing retained the "sole right" to enforce the Boeing Patents and pursue infringers within a field-of-use plainly precluded Acceleration Bay from bringing suit in its own name, and this is true regardless of the scope of that field. *See Int'l Gamco*, 504 F.3d at 1280 (field-of-use licensee lacks standing because it "does not hold all substantial rights in the full scope of the [] patent").

Further, regardless of who Acceleration Bay believed to be the owner or exclusive licensee, Federal Circuit law requires that both the exclusive licensee and the patent owner be joined to satisfy prudential standing requirements. *See* D.I. 148 at 9-10 ("Even if I were to conclude, as Acceleration Bay urges, that Boeing transferred all substantial rights to Acceleration

Bay, Boeing—as an exclusive licensee—would still need to be joined in this action."); *Int'l Gamco*, 504 F.3d at 1278. The Court's Order correctly notes that if Acceleration Bay and Boeing's roles were reversed, "Boeing—as an exclusive licensee—would still need to be joined in this action." D.I. 148 at 9.

Acceleration Bay ignored controlling precedent and ultimately could not cite a single Federal Circuit or Supreme Court authority that supported its arguments. Instead, it grossly mischaracterized existing law and misrepresented the cases it did cite. For example:

- Acceleration Bay misrepresented the holding of *Alfred E. Mann*, arguing that it stood for the generic proposition that "'When a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name.'" D.I. 137 at 1. Its argument ignores *Alfred E. Mann*'s principal holding that "When there is an exclusive license agreement . . . either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation." *Alfred E. Mann*, 604 F.3d at 1360.

- Acceleration Bay misrepresented the holding of *Luminara Worldwide v. Liown Elecs.*, 814 F.3d 1343, 1351 (Fed. Cir. 2016). It claimed that the Court found an exclusive licensee to have standing even though the assignor had, among other things, retained the right to "license the patents within a specified field." D.I. 109 at 10-11. But the Federal Circuit specifically found the opposite: the assignor "did not retain the broad licensing rights" claimed. *Luminara*, 814 F.3d at 1349. What is more, the court expressly limited its decision to certain rights it identified—which did not include *any* right to license, much less to license in a specific field. *See id.* at 1351. *Luminara* never even mentions field of use.

- Acceleration Bay misrepresented the holding of *Princeton Digital Image Corp. v. Hewlett-Packard*, C.A. No. 12-779, 2013 WL 1454945 (S.D.N.Y. Mar. 21, 2013). It argued that the case held that an "assignee has standing to assert patent despite assignor's retention of exclusive license in a field of use." D.I. 109 at 9. But the court held no such thing. As emphasized, assignor GE did not "retain" any rights; GE assigned the patents *in toto*, and was then granted back a "non-exclusive license," an "illusory" right to license patents that had already expired, and "no exclusionary rights." *Princeton Digital*, 2013 WL 1454945, at *4, *6. Acceleration Bay repeated this misrepresentation at oral argument. *See* Hr'g Tr. (5/2/16) Ex. 14) at 43:11–24.

- Similarly, it misrepresented the holding of *Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729 (D. Del. 2013). It argued that the case held that assignment of "all right title, and interest in and to the patents and patent applications" was sufficient to convey ownership without regard to the rest of the contract. D.I. 109 at 4. Acceleration Bay failed to mention that the assignor did not retain any interest in the assigned patents,

unlike Boeing had here. *See Walker Digital*, 950 F.Supp. 2d at 732 ("Seller reserves no rights whatsoever in the Transferred Patents.").

Courts have awarded fees after dismissal for lack of standing under far less egregious circumstances. For example, in *Advanced Video Techs.*, the court awarded fees for bringing and maintaining suits when the plaintiff did not have the necessary interests for standing. 2015 WL 7621483, at *2. There, as here, the court observed that "[o]btaining ownership of the patent was [the NPE]'s *sine qua non*, the only thing Plaintiff absolutely had to accomplish in order to fulfill its destiny. At this simple task it proved an abysmal failure." *Id.*[10]

## VII. DEFENDANTS SHOULD BE AWARDED THEIR FEES UNDER 35 U.S.C. § 285 BECAUSE ACCELERATION BAY LITIGATED THIS CASE IN A VEXATIOUS MANNER

Acceleration Bay brought these suits without a good faith basis and then continued to litigate them with an aggressive litigation strategy. Acceleration Bay's actions were reckless in at least the following respects:

- It filed complaints which alleged with no basis that Acceleration Bay owned "all right, title and interest" in the Asserted Patents;.

- It then failed to produce, or disclose the existence and significance of, the Boeing Agreement which demonstrated the true facts;

- It attempted to substantiate that position with the misleading and irrelevant Recorded Assignment—a document that Acceleration Bay itself prepared.

- It failed to "pause[] to further investigate whether its positions were legally tenable" after Defendants pointed out the lack of standing on February 12, 2016. *See Lakim Indus., Inc. v. Linzer Prods. Corp.*, 2013 WL 1767799, at *7 (C.D. Cal. Apr. 24, 2013) (granting § 285 attorneys' fees).

---

[10]    In contrast, Judge Stark determined that the defects in Clouding's standing were not so obvious that Defendants should be awarded fees. *Clouding IP, LLC v. EMC Corp.*, 2015 WL 5766872, at *1 (D. Del. Sept. 30, 2015). The instant case is different. For instance, unlike *Clouding*, Acceleration Bay had no good faith basis for asserting it had standing. The agreement in *Clouding* did not leave the patent holder with exclusionary field-of-use rights, which the Federal Circuit has categorically held deprives a party from suing on its own. Moreover, the patent owner retained no enforcement rights for itself as a prospective plaintiff, but only as a counter-claimant. *See Clouding*, 61 F.Supp.3d at 434.

- It advanced weak arguments in opposition to the motion to dismiss, and repeatedly misrepresented the facts and the controlling case law on the issue. *See* D.I. 109, 132, 140.

- It opposed the motion to stay, repeating its "ownership" argument and alleging that the "true impetus behind Defendants' motion is to thwart the discovery that the Special Master recently ordered..." D.I. 132 at 2. It also argued against the stay by arguing that Acceleration Bay could "cure any defect in prudential standing…" *Id*. at 1. Of course, it never attempted to do so.

Courts have cautioned that, where a plaintiff initiates a baseless lawsuit and ignores motions and rulings pointing out substantive shortcomings, it does so at its own peril. *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920-21 (Fed. Cir. 2012) (affirming fee award because plaintiff "not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused . . . needless litigation expenses").

Moreover, Acceleration Bay's reckless litigation tactics were not limited to its lack of standing. For instance, during the short period where discovery was open:

- It filed eight discovery motions, including two motions for reconsideration, prevailing on neither, on which it was largely unsuccessful. Some were frivolous. For instance:

  o Its motion for reconsideration regarding the protective order simply repeated its arguments with more words. D.I. 48. Acceleration Bay identified no change in law, error, or newly discovered evidence to justify reconsideration; and did not attempt to prove "manifest injustice."

  o It threatened and filed a motion for contempt and to compel core technical documents over the holidays and before it had even started to meaningfully inspect Defendants' source code materials. D.I. 66. At the hearing, it basically withdrew the motion and instead, for the first time, asked for a 2-week extension on infringement contentions so it could review the source code. D.I. 68 at 9:1-6. But after all that, Plaintiff's infringement contentions failed to cite to a single bit of source code.

- Acceleration Bay specifically accused Sony products and insisted on discovery regarding them despite knowing it did not have exclusive rights in that field. Exs. 2, 4.

17

These actions were vexatious. *See Homeland Housewares, LLC v. Sorensen Res.*, 581 F. App'x 877, 881 (Fed. Cir. 2014).

Acceleration Bay had free reign for unrestrained litigation tactics because it had little investment in the cases. Acceleration Bay has no business operations at stake, essentially no documents to produce, and a third party – █████████████████████████. Judges in this District have held parties accountable for their behavior when they cross the line as Acceleration Bay has done here.  *See, e.g.*, *Summit Data Sys., LLC v. EMC Corp.*, 2014 WL 4955689, at *4 (D. Del. Sept. 25, 2014) ("the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith."); *Parallel Iron LLC v. NetApp Inc.*, 70 F.Supp.3d 585, 591 (D. Del. 2014) (finding that the plaintiff "brought this suit without a good faith basis and then continued to litigate the case via a misleading and prejudicial litigation strategy.").

The manner in which Acceleration Bay litigated this case alone renders it exceptional. Although "[n]o award under Section 285 can fully compensate a defendant subjected to bad faith litigation, e.g., for loss of executives' time and missed business opportunities," *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988), an award of attorneys' fees needlessly spent defending unjustified litigation begins to remedy the negative effects of cases like this one.  An award of fees under Section 285 would also alter the kind of economic calculus that appears to have driven Acceleration Bay's conduct.  Defendants should be reimbursed for the time and money they have spent defending their rights against Acceleration Bay's groundless allegations.

## VIII.  ALTERNATIVELY, THE COURT SHOULD AWARD DEFENDANTS THEIR FEES AND COSTS UNDER ITS INHERENT POWER

In addition to Section 285, the Court has inherent power to award fees. "[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). This remedy serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id*. at 46. "The Supreme Court has recognized the inherent power of courts to impose sanctions in order to manage their own affairs and achieve orderly and expeditious disposition of cases." *Ray v. Eyster*, 132 F.3d 152, 156 (3d Cir. 1997).

In *Parallel Iron*, this Court reviewed in detail the inherent power to award attorney's fees and the circumstances under which that power may be exercised. In that case, the Court awarded attorneys' fees to the defendant after the plaintiff dismissed its action and discontinued the litigation, finding that the plaintiff acted in bad faith, vexatiously, and wantonly "as it brought this suit without a good faith basis and then continued to litigate the case via a misleading and prejudicial litigation strategy." 2014 WL 4540209, at *5.

Acceleration Bay's actions in these cases rose to that level. For pure economic gain, Acceleration Bay structured an arrangement that failed to pass muster under a well-developed body of standing law. The enterprise was frivolous from the start. *Any* good faith analysis of Supreme Court and Federal Circuit law—and at the very least, the "'most important factor'" in the *Alfred E. Mann* framework (*see* D.I. 148 at 7)—would have prompted a litigant in Acceleration Bay's position to pause and rethink its plan to impose a massive litigation burden on Defendants based on the Boeing Agreement.

Instead, knowing that the Boeing Agreement did not convey effective patent ownership or all substantial rights to Acceleration Bay, and knowing that Boeing would not join the suit,[11] Acceleration Bay nonetheless launched large-scale litigation without regard for the threshold

---

[11]   *See, e.g.*, Hr'g Tr. (5/2/16) (Ex. 14) at 34:20 *and* 34:12-18; *see also id.* at 45:19-22.

determination of standing.  Acceleration Bay even accused Sony products despite knowing it had

no exclusive rights in that field. *See* Exs. 2, 4. Acceleration Bay caused and then multiplied these

proceedings and forced Defendants to incur substantial expense to defend themselves in suit.

And after Defendants raised the standing issue, Acceleration Bay continued to ramp up discovery

costs over the subsequent four months, rather than apply the brakes and consider its position.

Acceleration Bay saddled Defendants with millions of dollars in legal fees and costs despite

having had no basis to file the suit in the first place.

## IX.    CONCLUSION

Defendants respectfully request the Court award Defendants their attorneys' fees, costs,

and other expenses incurred in their defense.  Pursuant to Fed. R. Civ. P 54(d)(2)(B)(iii),

Defendants estimate that they have incurred approximately the following fees and costs through

June 20, 2016 in connection with their defense of these cases, including the costs of the IPRs that

were filed,[12] which are broken out separately:

|  | **Fees** | **Costs** |
|---|---|---|
| Defense of Delaware Actions | ■ | ■ |
| *Inter Partes* Review on Asserted Patents | ■ | ■ |

---

[12]    *See, e.g., IA Labs CA, LLC v. Nintendo Co., Ltd.*, 2012 WL 1565296, at *4 (D. Md. May 1, 2012), *aff'd*, 515 F. App'x 892 (Fed. Cir. 2013) (awarding defendant "fees incurred as a result of filing a petition for reexamination before the PTO"); *Deep Sky Software, Inc. v. Sw. Airlines Co.*, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) (same); *see also PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-1569 (Fed. Cir. 1988) (awarding the prevailing party attorneys' fees "for legal services rendered before the PTO in opposing … [patentee's] reissue applications" on the premise that "the reissue proceedings substituted for the district court litigation on all issues considered by the PTO and the Board.").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071
(213) 615-1700

David P. Enzminger
WINSTON & STRAWN LLP
275 Middlefield Road
Suite 205
Menlo Park, CA 94025
(650) 858-6500

Daniel K. Webb
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

July 11, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 18, 2016, upon the following in the manner indicated:

Philip A. Rovner, Esquire                          *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                             *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
James R. Hannah, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Aaron M. Frankel, Esquire                          *VIA ELECTRONIC MAIL*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)